May it please the court, my name is Andrew Carafelli. I represent Derek Myers, the appellant in this matter. I would like to reserve three minutes of my time for reporting. There is a legal maxim which basically goes, justice delayed is justice denied. The origins of that maxim are somewhat vague, but it's attributed to William Glastonbury some 150 years ago during a debate. Well, Mr. Myers filed his motion to dismiss just over two years ago now. And it hasn't been 150 years, but now plaintiff is pretending or claiming that we should not even be here in front of this court because the district court didn't even really issue an order denying his motion to dismiss based on qualified immunity. It rather just engaged in an administrative function. And isn't that the problem that you have? We allow interlocutory appeals when the court rules on qualified immunity issues, but have not allowed interlocutory appeals when it's based on administrative rulings. And it seems to me that the case of Peterson v. Reich, Eighth Circuit, not our circuit for the closest, but that one, clearly indicated that a dismissal without prejudice and doesn't rule on qualified immunity is not a basis for an interlocutory appeal. And I'm sorry, Your Honor, which case out of the Eighth Circuit? Peterson. Yeah, Peterson v. Reich. Well, Your Honor, I would submit that the two other circuits, the Second Circuit and the Sixth Circuit, have also looked at issues where the lower court has denied rulings on motion for summary judgment or dismissal without prejudice and found that that's not the touchstone here. That's part of it, I think. But the other part is that here the denial wasn't on qualified immunity. The denial was on an administrative decision that, well, we've got another case pending before the Tenth Circuit. It's going to decide a big issue that's going to be relevant to mine. So I'm going to clear the deck, put everybody on stay so nobody is under any immediate problems. And we're going to wait for that other ruling. That was just plain not a ruling on denying qualified immunity. It was an administrative ruling for the efficient presentation of the court process. And that ordinarily would not be a ground for an interlocutory appeal. Well, Your Honor, I would submit that this court has looked at whether there's an order or not does not matter. They said silence in of itself can be an implicit denial of qualified immunity. But isn't it precisely the district court's administrative rationale that makes this not an implicit denial? It's pretty clear that the denial here is in relation to further filings that might come, the opportunity to refile. It seems to me that your challenge all along has been to the stay of this litigation. But I didn't see you ever object to that. Did you? No, we didn't object to the stay of discovery, Your Honor. But as you know, the burdens of litigation go far beyond just discovery. There's the concerns about discovery. There is incurrence of attorney's fees and expenses that all have been running now for over a year since the court entered its order denying this motion. What would be the fees if the discovery's been stayed and everything's waiting for the circuit to rule on Westfall? Well, Your Honor, once the case, once she entered her order, then there was the whole Westfall proceeding going on. There was a bankruptcy entered. All along, I'm having to review pleadings. I thought they dismissed you from the state law claims so you weren't part of the Westfall certification proceedings. Well, that is true, Your Honor. But every time something pops up on Pacer, I need to look at it and see if it applies to me or not. Regardless, my client is always calling me saying what's going on, what is the status of this case, those types of things. He's concerned about this litigation, obviously. He's being sued individually here. So, again, the burdens of litigation go far beyond state discovery. Well, just angst about being in litigation, if we allowed that as a meaningful injury, it would change the law considerably. I mean, it's assumed that that is part of what's going on. What we have to look at is the objective stuff. What kind of order are you under right now? Answer none. There's no order compelling us to do a thing at this point in time. But as far as going back to the administrative nature of this order, all the cases that we cite in our brief where courts have looked at lower courts not refusing to rule on motions to dismiss or declining to for whatever reason, they don't really get into the motivation of why the court did or didn't do it. What they're looking at is the final effect of that order, which, again, is putting the person or subjecting them to the burdens of litigation. And that's what's still been going on here as well. So I don't think that you can really parse out, oh, this is an administrative function that, again, stays the litigation because of something going on that has nothing to do with my client whatsoever. I think the court was in error making that ruling. For one, the Westfall certification wasn't applicable to us whatsoever. The lower court didn't lose jurisdiction to hear our argument about the Bivens and qualified immunity issue whatsoever. So she was wrong about that and could have ruled on that motion long ago, but still has not done so. So our point would be that, in fact, it was an interlocked or an appealable order at that point in time. Whether you want to characterize it as an administrative stay, it was still clearly a denial of his motion to dismiss, even it was without prejudice. And that's why we're here now asking this court to find as a matter of law that the court should have ruled on it and looked at the Bivens issue below. Now, turning to the Bivens issue, the plaintiff here wants to argue that, in fact, there is, I guess, a Bivens case to be heard here. We would disagree with that. Clearly, this case is a new context under Bivens, which the court in Egbert has ruled is not a cognizable claim under Bivens whatsoever. This is a case of employees of BOP, employees suing other employees of BOP over this mock exercise. This, again, is a total new context. The only thing I could find close would be the case of Bush versus Lucas in the Supreme Court. There were employees sued a supervisor over some issues, personnel issues, and the Supreme Court declined to create a new Bivens issue in that context, indicating that they had personnel remedies that they could follow. So this is clearly a new Bivens context that shouldn't be recognized by this court. Counsel, did you, in your appeal brief, did you even argue qualified immunity? Because the district court obviously didn't rule on your qualified immunity argument, and you seem to drop that on appeal and just focus on Bivens. Well, Your Honor, Bivens is the threshold to qualified immunity. I understand that, but if you're not arguing qualified immunity, there's another problem with appellate jurisdiction, because we would only have that based on a finding of qualified immunity determination. We'd only have jurisdiction based on that. Well, our position would be, Your Honor, that the Bivens is an antecedent threshold issue of qualified immunity. They go hand in hand. You really can't separate them. If the court looks at the Bivens issue and says, you know, there is no claim there, you don't even get to the qualified immunity issue whatsoever. And Ebert has made clear that there simply is no Bivens claim here at all. So we don't need to really get to the underlying, I guess, granular arguments about qualified immunity, because here, again, we argue the Bivens threshold issue. You didn't frame your argument about the merits as a part of the qualified immunity issue, did you? I mean, you argued it as a straight-up merits issue that Bivens should not be extended. Correct. And so, I mean, I'm kind of feeling that you're not presenting the kind of qualified immunity issue that we normally require for an interlocutory appeal. Well, Your Honor, there's a number of cases we've cited where the other circuit courts have actually just looked at the Bivens issue on an interlocutory type appeal without getting to the underlying qualified immunity analysis itself. Because, again, Bivens is a threshold to the qualified immunity argument. If there is no Bivens action, the court doesn't have to waste its time in analyzing the qualified immunity below. And that's what we've argued here. Going back to Bivens, obviously here, the other issue that Ebert brought out, of course, is there's only one question for this court to ask itself now is, basically, is it in a better position as opposed to Congress to determine remedies here? And I would submit absolutely not. The Supreme Court has declined creating excessive force Bivens remedies. And that's what the plaintiffs are trying to create here. This court should not extend that or create an excessive force Bivens claim here whatsoever either. The other issue here, obviously, is that we have a situation, and this is similar to Hernandez v. Mesa, where the Supreme Court declined to create an excessive force Bivens action because they said this has to do with national security. Well, here we're talking about a little bit different national security, but we're talking about federal prisons and a mock training exercise. And I think Congress is in a much better position to determine how to handle when mock training exercises go awry as opposed to the judiciary. So that would then hesitate against, again, expanding Bivens whatsoever here. Then you look at the alternative remedial structures that Ebert says we must look at as well. We know that the Office of the Inspector General is investigating this matter. I don't think it's still issued a report in it, but several circuit courts have indicated that is a sufficient remedial. But those investigations don't give, I mean, a right to do an investigation doesn't give relief to an individual who claims to have been injured in the process. Your Honor, Bivens. I mean, I'm not quarreling that there might indeed be adequate remedies anyhow, but it's not, I don't find those adequate remedies in the grounds you've just asserted that there is a right to investigate. Your Honor, Bivens does not require any type of remedy to a plaintiff such as monetary relief whatsoever. The whole point of Bivens is to deter future constitutional violations. And thus, them or the OIG investigating this matter, making recommendations to the prison system, prison officials about how to better their training exercises would be a sufficient remedy here. And, again, a number of circuit courts have looked at that very issue and said, yes, this is a sufficient remedy here under Bivens that hesitates against expanding a Bivens action. Further, the plaintiffs have a Federal Tort Claims Act remedy available to them. It's my understanding that several of them have pursued that remedy. And so, again, there are remedies here for them to pursue. All of these things should hesitate this panel or this court, rather, from expanding Bivens and creating a new Fourth Amendment excessive force claim here. So unless the panel has any more questions. No. Thank you. Thank you. Morning again, Your Honors. Andrew Bergman representing the Plaintiff of Palais, Jose Arroyo, Heather Bohm, Sam Cordo, and Amber Miller. Your Honors, this court does not have appellate jurisdiction in this case. And I think the admission that they're not raising qualified immunity ends that question. There is no authority that they can independently use the qualified or the collateral order doctrine to take an interlocutory appeal of the Bivens issue in isolation. So let's assume that that makes sense. I have a different question for you. If you look at the district court's order, the first part of it states that she says the district court is divested of jurisdiction. Is that correct? That's right, Your Honor. Why was the district court divested of jurisdiction in this case over when your friend on the other side is not part of the Westfall appeals at all? The district court determined that she lacked jurisdiction over all of the defendant's motions to dismiss, which raised similar issues to one another, and that she lacked jurisdiction because the issues in those motions to dismiss were close enough or intertwined with the issues in the Westfall appeal that were being appealed to this court and that the court lost jurisdiction for that reason. So is your understanding of the district court's order then that she lacked jurisdiction to consider the motions or that she made an administrative decision not to? I think it's both. So the district court believed that she didn't have jurisdiction to proceed with these motions, and what she did was entered an administrative order that was basically like a docket clearance, like a sort of routine clearing these off the docket while the case has stayed, and then they can be refiled once they're appealed. She did it without prejudice. I thought that it was pretty clear that she was clearing the docket, that she was saying, we've got this other matter up the Tenth Circuit. I'm going to clear everything off so that there's no legal impediments to any of you people while we're waiting. And I thought it was very clear that it was an administrative decision she made. I think that's right, Your Honor. She also believed that she didn't have jurisdiction, but, you know, jurisdiction to grant the motions to dismiss or to issue rulings on those. We would say that her ruling was administrative in nature, and it was something that flowed from her determination that she didn't have jurisdiction to consider those motions. So she wasn't issuing a ruling in that administrative order for which she had to, you know, have jurisdiction in order to do that would be our view of that. But what I think is- I thought that she did have jurisdiction over Mr. Myers because he has nothing to do with the Westfall appeals. The claims against him that would implicate the Westfall Act were dismissed. So she may not have had jurisdiction otherwise, but she did as to Mr. Myers, and then made a decision that is reviewable, but is an administrative decision to wait and dismiss without prejudice. I think she- the district court thought that she didn't have jurisdiction over any of the defendant's motions to dismiss, and that was why she was staying the case generally. But the determination there was based on her finding that the issues in the motions were raised by all the defendants, including Myers and the others, which are similar. This included the Bivens issue. This included qualified immunity. This included 12B6 arguments about whether they had stated a claim, things along those lines. And the district court thought that those issues were just sufficiently intertwined with the questions that were being appealed in the Westfall decision. Well, technically, if the district court was correct, that the filing of the notice of appeal had jurisdictional significance and divested her of the court of control over those aspects concerned with the appeal, she didn't have the ability to enter this motion to dismiss or enter this order on the motions to dismiss. I think you need her to have jurisdiction over Mr. Myers. Yeah, I think you need her to. If you want us to consider the administrative dismissal, she had to have jurisdiction to enter it. We would say that the administrative order was not a ruling on the motions to dismiss. It was just clearing of the docket. It certainly was. She certainly did deny the motions and said, you know, without prejudice, to being refiled. That's correct. I would say that whether the court had jurisdiction or not with respect to Mr. Myers' motion, I don't think it would control the question as to whether this court has jurisdiction to hear the appeal. Even if this court thinks that there was jurisdiction to issue the order denying the motion to dismiss, it still wouldn't meet the requirements under Cohen for taking a collateral order appeal. It's certainly not a conclusive ruling. It doesn't issue any ruling on a pure issue of law. It's an administrative ruling. Could you say more about why you mentioned earlier that the appellant's failure to argue qualified immunity on appeal is fatal? Could you say more about that? Sure. So qualified immunity is or it can in some circumstances be appealable under the collateral order doctrine. But the issue that they're actually arguing on appeal, which is the Bivens extension, that has not been held to be independently appealable. And so without qualified immunity, there's no basis under the collateral order doctrine to consider this appeal. And in fact, two circuits, the Third Circuit and the Sixth Circuit, have specifically rejected the notion that you can independently appeal the Bivens extension ruling separate from qualified immunity. And that's what they're trying to do here. And if the court were to consider the Bivens issue in isolation in a collateral order appeal, it would be creating a circuit split from those rulings. So the cases that counsel talked about where he said they did allow appeal of the Bivens issue without the qualified immunity issue, those were probably final orders on a motion to dismiss or a 12B6 motion for failure to state a claim rather than qualified immunity. I think some of the... Not subject to the collateral order exception is what I'm saying. Right. I think some of those decisions would have involved cases, yes, where it was final. So the case was dismissed. And then both of the issues went up together. And then the court elected to consider the Bivens issue first rather than the qualified immunity issue. Or I think there are in some instances where it is an interlocutory appeal under the collateral order doctrine. They're brought up at the same time. And they're both... Both issues are appealed. And so jurisdiction properly attaches because both issues are appealed. And then I think at that point, if the court wanted in its discretion to look at one issue first and the other issue second, it could do that. But jurisdiction was there because qualified immunity was actually appealed. And here, it's not appealed. And, you know, frankly, they said, Myers said in his response to the motion dismissed that they were going to raise qualified immunity and proceeded to not actually do that. If anything, to the extent qualified immunity is present in this appeal at all, it was waived either by failure to raise it or, you know, briefing waiver by failure to adequately brief it. And so what he's asking the court to do is to allow essentially a bait and switch to get into federal appellate jurisdiction. Where if you just say you're going to raise an issue, but then you don't actually do it, you can sort of smuggle in any other issue over which there's no jurisdictional basis. And we think that is completely unsupported. And the court should not condone that view. I do want to respond to Mr. Carfelli's point about how Bivens is antecedent to qualified immunity. I think that's just inaccurate. This was not argued in their briefs. And this is, I think, the first time they've made this point. But it's also substantively incorrect. These are two different things. Qualified immunity is a right to not stand trial, to not have discovery. Bivens is a remedy. And whether a Bivens extension should be allowed is a question that the district court determines in the context of deciding whether there should be a remedy. There's no right afforded to the defendant with respect to the Bivens issue. It's not antecedent. The reason qualified immunity is appealable under the collateral order doctrine is because of the right that the defendant has to not stand trial. Bivens is not the same question. And so there is no similar reasoning for allowing consideration of that issue before a final judgment. I'd also like to address Judge Abell's point about the adequacy of the remedy for purposes of Bivens and whether an investigation is an adequate remedy. I think that actually gets to the point as to why this shouldn't be appealable at this time in the case, right? It's not clear whether an investigation is an adequate remedy. And that's something on which there should be trial court proceedings. There could be discovery. There could be findings by the trial court and a determination on that issue. Although he does advance that there are other private remedies out there. In addition, the particular first argument he made, which is the one you're addressing, I obviously am sympathetic with your position. But he does argue other remedies, I think, that are available. That's correct. And I think we briefed the issue. We would disagree that the other remedies would be considered adequate or even applicable to these types of claims. When we're looking at adequacy of remedies, the question from the Supreme Court, I think this is in Egbert, this is in Ziegler, is whether it's deterring unconstitutional conduct by the defendants. And the statutes that they're citing, for example, wouldn't even apply in this situation. So there wouldn't be a deterrent. So one of his arguments of a remedy was under the Federal Tort Claims Act. Apply your statement that you just made to that alternative. Why is that not applicable? Sure. So we would say that the Federal Tort Claims Act would not deter unconstitutional conduct by these defendants because that would apply only in the context of claims that are brought against the United States itself. It has nothing to do with the individual defendants. That's the answer I was hoping for. Right. I think that's the last point that I had prepared. Unless the Court has other questions, I'll conclude here. Thank you. Thank you. Very briefly, Mr. Bergman made the claim that Bivens was not part of qualified immunity and this Court had no jurisdiction to hear it. In our brief, we've cited a number of cases, a number of circuits, including one from the Tenth Circuit, who has indeed found that it can look at Bivens as an initial part of his decision on qualified immunity as an interlocutory appeal. That's the case of Big Cats of Serenity Springs v. Rhodes. There they found they had jurisdiction to consider the availability of a Bivens cause of action in an interlocutory appeal from a denial of qualified immunity. I'm sure you had that in your briefs. Just give me the site, would you? Yes, sir. It is 843 F. 3rd, 853 Tenth Circuit, 2016. Thank you. Further, the Ninth Circuit has done similarly, and I don't know how to pronounce this. I was just interested in Big Cats. Don't worry about anything else. Okay. Well, all I would say is in our brief on page 5, our opening brief, we have set forth every circuit, including the Seventh, Third, Ninth, and Fifth, who've all looked at this issue and concluded we can look at the Bivens issue as a threshold issue in looking on an interlocutory appeal from qualified immunity. Then just briefly, going back to the remedy issue, again, a number of circuit courts have found that these types of administrative investigations are a sufficient remedy under Bivens. Even Ebert, the Supreme Court, found there where they were investigating that incident was sufficient. Mayhaw v. Mueller of the Fourth Circuit, again, found that complaints to the officer inspector general of the Bureau of Land Management was an appropriate remedial remedy under Bivens. So, again, it doesn't matter whether all the remedies are available to the plaintiffs under Bivens. It's just sufficient if there is one. And, again, here we know it's undisputed that the office of the investigative general isn't looking into this case. Thank you, counsel. I guess just to conclude, I would ask that this court find as a matter of law that there is no cognizable Bivens action here and direct the court to enter judgment in favor of Mr. Myers below and dismiss the claims against him. Thank you very much. Thanks to both counsel for your helpful arguments. The case will be submitted and counsel are excused.